## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF ILLINOIS

IN RE:                                                          )
                                                                )
JAMES ROY GREEN and LISA ANN GREEN,   )          No. 10-30859
                                                                )
                                        Debtors.        )

### O P I N I O N

Before the Court are two matters raised by Wells Fargo Bank N.A., successor by merger to Wells Fargo Home Mortgage, Inc. ("Wells Fargo"): (1) a motion to modify the automatic stay, alleging Wells Fargo is not adequately protected because post-petition mortgage payments of $638.60 per month have not been made; and (2) an objection to confirmation of the Debtors' plan, alleging that the proposed plan impermissibly modifies Wells Fargo's mortgage in contravention of §1322(b)(2) by classifying the Debtors' mobile home separately from the land upon which it is affixed and cramming down the personal property claim from a scheduled debt of $71,688.24 to $25,000.[1] Because of the requirements of § 362(e), this Court gave an abbreviated oral opinion on August 9, 2010. The Court will now address each of these matters in turn in more detail.

The Debtors filed their petition for relief under Chapter 13 of the Bankruptcy Code on March 31, 2010. On April 14, 2010, the Debtors filed their proposed Chapter 13 plan, in which the debt to Wells Fargo is treated as two separate claims: the first secured by the 2003 Clayton mobile home, which the Debtors cram down to a value of $25,000, and the second as secured by the city lot and garage, which the Debtors value at $13,000. The plan further provides for Wells Fargo to be paid $474.65 per month by the Trustee on the claim secured by the mobile home and $246.82 per month by the Trustee on the claim secured by the lot and garage. Accordingly, the proposed plan provides for the Trustee to make payments totaling $721.47 per month to Wells Fargo during the life of the

---

[1] It should be noted that since the date of the hearing in this matter, the Debtors have subsequently filed a first amended proposed plan. However, the first amended plan does not change the treatment of Wells Fargo's claims.

plan.

On April 8, 2010, Wells Fargo filed Claim No. 4-1 for a prepetition mortgage arrearage of $3,576.64. The claim further shows that the approximate principal balance on the loan at the date of filing was $71,058.60. On April 12, 2010, Wells Fargo filed Claim No. 5-1 for $11,201.77 for a real estate secured platinum credit card. The Debtors have not objected to either of these claims.[2]

This Court will first address Wells Fargo's motion to modify the automatic stay. In its brief in support of its motion to modify the stay, Wells Fargo asserts that postpetition mortgage payments are not being made. Wells Fargo also asserts it is entitled to stay relief because a prepetition mortgage arrearage of $3,576.64 was not provided for in the plan, the plan proposed to reduce the interest rate from 6.5% to 5.25%, and the plan reduces Wells Fargo's claim by $30,000 with "no basis in law or fact." The Debtors respond that monthly postpetition payments are being made by the Trustee in the amount of $721.47 per month and therefore Wells Fargo is currently receiving adequate protection.

Section 362(d) of the Bankruptcy Code provides two grounds under which relief from the automatic stay may be granted. The first ground is for cause, including a lack of adequate protection of an interest in property of a party in interest. 11 U.S.C. § 362(d)(1). The second ground is that the debtor does not have equity in the property and the property is unnecessary to an effective reorganization. 11 U.S.C. § 362(d)(2). Section 362(g) provides that the party requesting relief from the automatic stay has the burden of proof on the issue of the debtor's equity in the property and that the party opposing such relief has the burden of proof on all other issues. 11 U.S.C. § 362(g).

In this case, Wells Fargo is asserting that it is entitled to stay relief because postpetition mortgage payments are not being made and therefore it is not adequately protected. While

---

[2]The Debtors' plan does not appear to provide for the amount claimed by Wells Fargo in Claim No. 5-1. However, Wells Fargo has not raised this issue in its objection to confirmation.

"adequate protection" is not defined by the Bankruptcy Code, whether a particular secured creditor is adequately protected is a determination to be made on a case-by-case basis and is within the discretion of the court.[3] The purpose of adequate protection payments in a Chapter 13 proceeding is to compensate a secured creditor for any depreciation of its collateral between the time the creditor moves for relief from the automatic stay and confirmation of the plan. *In re Cook*, 205 B.R 437, 441 (Bankr.N.D.Fla. 1997).

The Bankruptcy Court for the Southern District has entered Amended Standing Order 07-5, entitled "Amended General Order for Administration of Chapter 13 cases filed on or after July 1, 2007," which specifically provides for interim disbursements by the Trustee, including adequate protection payments:

> Following the Section 341 Meeting of Creditors, the Chapter 13 Trustee shall commence disbursement of payments from funds received from, or on behalf of, the Debtor(s), as follows:
>
> Any unpaid filing fee due to the Clerk;
> Trustee's fees and expense allowance, including noticing fees;
> Payments to the following creditors:
>
> a. On-going mortgage payments pursuant to the Debtor(s) Plan;
> b. Secured creditors for which a proof of claim is on file provided that (i) the Debtor(s)' plan provides for treatment of said claim; (ii) said claim is not listed as contingent, unliquidated or disputed in the Debtor(s)' schedules; and (ii) [sic] there is no pending objection on file to the payment of the claim; and
> c. attorney's fees as set forth in the Debtor(s)' plan.

Accordingly, because Wells Fargo has a secured claim on file that is provided for in the Debtors' plan and that claim has not been objected to by the Debtors or listed as contingent,

---

[3] Section 361 does, however, offer three non-exhaustive examples of how adequate protection could be provided by: (1) requiring the trustee to make . . . periodic cash payments to [the secured creditor], to the extent that the stay . . . results in a decrease in value of [the secured creditor's] interest in such property; (2) providing to [the secured creditor] an additional replacement lien to the extent that such stay . . . results in a decrease in the value of [the secured creditor's] interest in such property; or (3) granting such other relief . . . as will result in the realization by [the secured creditor] of the indubitable equivalent of [its] interest in such property. 11 U.S.C. § 361.

unliquidated or disputed in the schedules, under the Amended General Order, the Trustee is required to make adequate protection payments pending confirmation of the plan.

On July 9, 2010, the Court held a joint hearing on both Wells Fargo's motion to lift stay and its objection to confirmation. At the hearing, the parties concentrated on the confirmation issues and did not specifically address the motion to modify the automatic stay. However, Wells Fargo introduced several documents into evidence, including documents dealing with Chapter 13 Trustee disbursements showing that on May 31, 2010, the Trustee disbursed $781.51 to Wells Fargo on both of its filed claims.[4] Accordingly, Wells Fargo's own evidence shows that it is now receiving adequate protection, and therefore, there is no cause to modify the automatic stay at this time.

Although Wells Fargo may not have been receiving distributions from the Trustee at the time it filed its motion to modify the automatic stay, the record shows that it is now receiving monthly payments from the Trustee. Accordingly, Wells Fargo's motion to modify the automatic stay is denied.

Wells Fargo's other assertions in support of its motion to modify the stay —that a prepetition mortgage arrearage of $3,576.64 has not been provided for in the plan, that the plan proposes to reduce the interest rate from 6.5% to 5.25%, and that the plan reduces Wells Fargo's claim by $30,000 with "no basis in law or fact"—do not constitute grounds for modifying the automatic stay and will be addressed by this Court in the context of Wells Fargo's objection to confirmation, discussed below.

Turning to Wells Fargo's objection to confirmation, Wells Fargo asserts that the Debtors' plan (1) impermissibly modifies its rights in contravention of § 1322(b)(2) of the Bankruptcy Code

---

[4]Specifically, the documents provided by Wells Fargo show that on May 31, 2010, the Trustee paid Wells Fargo $289.69 plus $224.45 in interest on Claim No. 4 and $166.80 plus $100.57 in interest on Claim No. 5.

as Wells Fargo holds a claim secured by a mortgage lien on real estate that is the Debtors' principal residence; (2) impermissibly classifies the mobile home separately from the land upon which it is affixed; (3) impermissibly crams down the amount of its claim from $71,688.24 to $25,000; and (4) fails to provide for payment of a prepetition mortgage arrearage amount of $3,576.64.

The Debtors respond that the modification proposed in their Chapter 13 plan is permissible because the mobile home, although used by them as their primary residence, is a vehicle that is not permanently attached to the real estate. Specifically, the Debtors assert that their mobile home is not permanently resting "in whole or in part upon a permanent foundation" which would exempt it from the definition of "mobile home" provided by the Mobile Home Local Services Tax Act and thus allow for the property to be assessed and taxed as real property. *See* 35 ILCS 515/1. Therefore, according to the Debtors, Wells Fargo is not secured only by a security interest in "real property that is the debtor's principal residence" as required by the anti-modification provision provided in § 1322 (b)(2).

Section 1322(b)(2) authorizes a Chapter 13 plan to "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence . . ." 11 U.S.C. § 1322(b)(2). Accordingly, the issue for this Court to decide is whether the mobile home has become so affixed to the real estate that it has become a fixture subject to the non-modifiable mortgage of Wells Fargo or whether it is personal property, thus allowing the Debtors to modify Wells Fargo's claim as proposed in the plan.

The determination of whether a mobile home is real property or personal property for purposes of § 1322(b)(2) is governed by state law. *See Nobleman v. American Savings Bank,* 508 U.S. 324, 329, 113 S.Ct. 2106, 124 L.Ed. 2d 228 (1993) (citing *Butner v. U.S.*, 440 U.S. 48, 54-55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979)). In *In re Casper*, 156 B.R. 794, 800, (Bankr.S.D.Ill

1993), Judge Meyers recognized a three-part test under Illinois law for determining whether a piece of personal property has become a fixture:

> Personal property which is physically attached to real estate by one having interest in the land constitutes a "fixture." A fixture is, by definition, real property because it is incorporated in or attached to the realty. 19A Ill. L. & Prac., *Fixtures*, § 2, at 11 (1991) (hereinafter *ILP Fixtures*). Whether a particular item of personal property has become a fixture depends on the facts and circumstances of a case and is a mixed question of fact and law. *See Borrowman v. Howland*, 119 Ill.App.3d 493, 75 Ill.Dec. 313, 317, 457 N.E.2d 103, 107 (1983); *Davis Store Fixtures, Inc. v. Cadillac Club*, 60 Ill.App.2d 106, 207 N.E.2d 711, 713 (1965).
>
> Illinois courts apply three criteria to determine whether an article or structure is a fixture: (1) actual annexation to realty, (2) application to the use or purpose for which the land is appropriated, and (3) intention to make the article a permanent accession to the realty. *See Sword v. Low*, 122 Ill. 487, 496, 13 N.E. 836, 828 (1887): *Beeler v. Boylan*, 106 Ill.App.3d 667, 62 Ill.Dec. 385, 387, 435 N.E.2d 1357, 1359 (1982). Of these, intention is the most important factor, and annexation and adaptability merely bear upon and give evidence of the affixer's intent. *ILP Fixtures*, § 3; *Kelly v. Austin*, 46 Ill. 156, 158-59 (1867); *Thuma v. Granada Hotel Corp.*, 269 Ill.App. 484, at 491, 500 (1933); *see* 35 Am.Jur.2d *Fixtures*, § 14 (1967) (hereinafter *Am. Jur. Fixtures*). Intention is to be inferred from the circumstances surrounding the transaction, including the relation of the one making the annexation, the nature of the article affixed, the mode of attachment, and the purpose for which the annexation was made. *In re Theodore Kochs Co.*, 120 F.2d 603, 605-606 (7th Cir. 1941); *see Am. Jur. Fixtures*, § 15, at 712.
>
> The relation of the annexer to the realty is significant in discerning intent, as it is presumed that an annexation by one who owns the land is made with the design of its permanent enjoyment with the realty. *National Blvd. Bank of Chicago v. Citizens Utilities Co. of Ill.*, 107 Ill.App.3d 992, 63 Ill.Dec. 540, 548, 438 N.E.2d 471, 479 (1982); *Ayrshire Coal Co. v. Property Tax Appeal Bd.*, 19 Ill.App.3d 41, 310 N.E.2d 667, 671 (1974). This presumption is not lessened where the annexer has mortgaged the land or where title is uncertain, as the requisite intent is an objective one and is not affected by an undisclosed intent to remove the structure in the event title is lost. *See Am Jur. Fixtures*, § 15, at 711 (1967); *cf. Arnold v. Crowder*, 81 Ill. 56, 59 (1876) (court ruled that scales erected for mortgagor's use passed with real estate, finding the mortgagor "fixed [them] to the soil . . . for a permanent purpose, as he might never have been deprived of ownership of the premises.").

The Debtors assert that the definition of "mobile home" set forth in 35 ILCS 515/1 is controlling. That section provides:

> § 1. As used in this Act, "mobile home" means a factory assembled structure designed for permanent habitation and so constructed as to permit its transport on wheels, temporarily or permanently attached to its frame, from the place of its construction to the location, or subsequent locations, and placement on a temporary foundation, at which it is intended to be a permanent habitation, and situated so as to permit the occupancy thereof as a dwelling place for one or more persons, provided that any such structure resting in whole on a permanent foundation, with wheels, tongue and hitch removed at the time of registration provided for in Section 4 of this Act, shall not be construed as a "mobile home", but shall be assessed and taxed as real property as defined by Section 1-130 of the Property Tax Code. Mobile homes owned by a corporation or partnership and on which personal property taxes are paid as required under the Revenue Act of 1939 shall not be subject to this tax. Mobile homes located on a dealer's lot for resale purposes or as an office shall not be subject to this tax.

35 ILCS 515/1. At the hearing, counsel for the Debtors represented that this statute became effective on December 2, 1994, and argued that since it was enacted after the ruling in *Casper* (which was decided on July 20, 1993), the statute superceded *Casper*. However, the history of the statute shows that it was originally enacted effective August 28, 1973, and was amended in 1975 and again in 1994. This last amendment, effective December 2, 1994, was a technical amendment to delete obsolete text, to correct patent and technical errors, and to revise cross references. Contrary to the assertions of the Debtors' counsel, the statute does not supercede *Casper*. Additonally, as pointed out by Wells Fargo, the statute only relates to classifying a mobile home for tax purposes and does not purport to override the other laws.[5] Accordingly, this Court will review the evidence presented at the hearing in light of the criteria set forth in *Casper*.

At the hearing, the undisputed facts showed the Debtors purchased both the land and the mobile home under the mortgage and note for $76,850.[6] The manufactured home rider, attached to

---

[5] In *Casper*, Judge Meyers noted that the fact that the mobile home was assessed as real property was not conclusive of its status as realty but did support the inference that the mobile home was attached to the land with a permanent foundation. *Casper*, 794 B.R. at 801.

[6] James Green testified that he bought the land and mobile home separately and they were combined into one loan. The file stamp on the mortgage shows it was filed in the Recorder's Office for Madison County on June 20, 2003.

the mortgage and signed by the Debtors, provides that the Debtors would comply with state law regarding the affixation of the mobile home to classify the mobile home as real property. It further provides that the mobile home would, at all times, be permanently affixed to and be part of the property.

The evidence also showed the wheels, tongue and axle have been removed and that the mobile home is sitting twenty-four inches off the ground on concrete blocks, has been anchored to the ground with anchor straps, and has vinyl skirting on the outside. The Debtors' expert witness, Randy Bailey, testified that this setup was in compliance with a mobile home foundation but was not considered a "permanent foundation." Bailey stated that permanent foundation would require a continuous concrete wall around the outside of the home, with the home tied to that wall, usually with bolts or straps that come from a sill plate that is attached to the bottom of the home. Bailey indicated that it would take about three hours of preparation before the mobile home could be moved. The preparation would include attaching slip-axles and tires, bolting a hitch on, removing the vinyl skirting, and loading the concrete blocks.

The Debtor, James Green, testified that the mobile home is his residence. He also testified that a freestanding permanent porch, not attached to the mobile home, and a permanent garage, which is sitting on a concrete foundation, have also been built on the land. When asked about the manufactured home rider, Green testified that, at the time he signed the mortgage, he intended to permanently affix the mobile home to the real estate.

After reviewing the evidence presented at the hearing, this Court concludes that the Debtors intended the mobile home to become a part of the real estate. The mobile home is attached to real estate owned by the Debtors, and it is their principal residence. The wheels and axle have been removed, it is connected to utility hook-ups, the Debtors built a permanent garage and porch adjacent to the mobile home. To move the mobile home would require detaching the skirting,

removing the blocks and returning the axles and wheels. Significantly, Debtor James Green admitted that, at the time the mortgage was executed, he intended to affix the mobile home to the land as required by the manufactured home rider. Although the Debtors make much of the fact that the mobile home was not attached to a permanent foundation, this Court finds that the circumstances surrounding the transaction coupled with James's statement of his intent clearly show that the Debtors' intent was to make the mobile home a fixture. Accordingly, Wells Fargo has a security interest in real property that is the Debtors' principal residence, and as such its rights are non-modifiable under § 1322(b)(2).[7] Because the Debtors attempt to modify Wells Fargo's rights in their proposed Chapter 13 plan, the plan as currently proposed is not confirmable.[8] To be confirmable under § 1322(b)(2), the plan must provide for the full amount of Wells Fargo's claim, including any prepetition arrearage.

Based on the foregoing, Wells Fargo's objection to confirmation is granted and confirmation of the Debtor's proposed plan is denied. The Debtor shall file a second amended plan consistent with this Opinion within fourteen (14) days.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

ENTERED: August 11, 2010

              /s/ William V. Altenberger
              UNITED STATES BANKRUPTCY JUDGE

---

[7] No issues have been raised regarding the validity of the mortgage and note held by Wells Fargo.

[8] At the hearing, the Debtors asserted that Wells Fargo failed to note its lien on the certificate of title for the mobile home. In a supplemental brief, Wells Fargo attached an abstract provided by the Secretary of State showing that Wells Fargo Wholesale Lending is the lienholder noted on the title for the Debtors' mobile home. The abstract shows that the most recent title issuance was July 14, 2003. In response, the Debtors indicated that as a result of the lien on the certificate of title, the Debtors "decline to plead further in this regard." As this Court has concluded that the mobile home is part of the real property securing the mortgage and note, any perfection issues with respect to the certificate of title are no longer relevant.